**In re SALINA SPEEDWAY, INC., Debtor.**

**UNITED STATES TRUSTEE, Appellant,**

v.

**Mark CRAIGE, Chapter 11 Trustee, and Terry P. Malloy & Associates, Appellees.**

BAP No. NO–96–049.
Bankruptcy No. 95–00733–W.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 13, 1997.

Paul R. Thomas, Assistant U.S. Trustee, Tulsa, OK, for Appellant.

Terry P. Malloy, Terry P. Malloy & Associates, Tulsa, OK, for Appellee Terry P. Malloy & Associates.

Before McFEELEY, Chief Judge, CLARK, and ROBINSON, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

The United States Trustee ("UST") appeals the order of the United States Bankruptcy Court for the Northern District of Oklahoma denying post-confirmation quarterly fees under 28 U.S.C. § 1930(a)(6). We affirm.[1]

## BACKGROUND

On March 3, 1995, Salina Speedway, Inc. filed a voluntary petition under chapter 11 of the United States Bankruptcy Code. On June 26, 1996, the Chapter 11 Trustee filed a liquidating plan. The plan made no provision for, and in fact did not even mention, post-confirmation quarterly fees to be paid to the UST. The UST filed no objection to the plan. On August 8, 1996, the Bankruptcy Court confirmed the plan. On August 19, 1996, the Court entered an Order Confirming Trustee's Plan of Distribution which noted, *inter alia*, that the Court had "determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. § 1129(a) have been satisfied." Order Confirming Trustee's Plan of Distribution, No. 95–00733–W (Bankr.N.D. Okla. filed Aug. 19, 1996) (Appellant's App. at 44).

On August 9, 1996, the day after confirmation, the UST filed its "Motion ... For Order Authorizing Inclusion of Quarterly Fees in Class 1(a) Administrative Claims ..." "(Motion"), asserting that the fees had not been paid for the second quarter of 1996 and that fees would likely be incurred at least through the third quarter. Terry P. Malloy, a holder of an administrative claim, filed an objection to the Motion. The Motion was denied by the Court on December 2, 1996. In its Order, the Court concluded as follows:

> 28 U.S.C. § 1930(a)(6) as amended effective January 26, 1996 applies to the present case; but that in this case, the UST's claim for post-confirmation quarterly fees ... is barred by failure of all parties, including the UST, to make provision for payment of such fees in a subsequently-confirmed plan....

Order Denying Motion of the United States Trustee for Order Authorizing Inclusion of Quarterly Fees in ... Administrative Claims ..., No. 95–00733–W, at pp. 13–14 (Bankr. N.D.Okla. filed Dec. 2, 1996) (Appellant's

---

1. After examining the briefs of the appellant and appellee, and the appellate record; the Court has determined unanimously to honor the appellant's request for a decision on the briefs without oral argument. *See* Fed.R.Bankr.P. 8012, 10th Cir. BAP L.R. 8012–1(a). The case is therefore submitted without oral argument.

App. at 77) ("Order Denying Motion"). The UST appeals from the Order Denying Motion.

## DISCUSSION

■ Before it was amended, 28 U.S.C. § 1930(a)(6) stated:

[A] quarterly fee shall be paid to the United States trustee … in each case under chapter 11 of title 11 for each quarter … until a plan is confirmed or the case is converted or dismissed, whichever occurs first.

This provision was amended in the Balanced Budget Downpayment Act, Pub.L. No. 104–99, § 211, 110 Stat. 26, 37–38 (1996), effective on January 26, 1996. The amendment simply removed the words "a plan is confirmed or" from the statute. Section 1930(a)(6) now states:

[A] quarterly fee shall be paid to the United States trustee … in each case under chapter 11 of title 11 for each quarter … until the case is converted or dismissed, whichever occurs first.

On appeal, the UST agrees with the Bankruptcy Court that the amendment to § 1930(a)(6) applies here because the plan was confirmed after the amendment became effective. However, the UST is faced with a confirmed plan that failed to provide for those fees. The UST cites several cases holding that the amendment is applicable to pending cases with plans confirmed prior to the effective date in an attempt to draw an analogy between this case and those. The UST argues that in both situations, courts were faced with confirmed plans that did not specifically provide for post-confirmation quarterly fees. See e.g., *United States Trustee v. Hudson Oil Co. (In re Hudson Oil Co.)*, 210 B.R. 380, 383–84 (D.Kan.1997); *Ostrovsky v. Precision Autocraft, Inc. (In re Precision Autocraft, Inc.)*, 207 B.R. 692, 694 (W.D.Wash.1997); *In re Flatbush Assocs.*, 198 B.R. 75, 77 n. 1 (Bankr.S.D.N.Y.1996); *In re Foxcroft Square Co.*, 198 B.R. 99, 103 (Bankr.E.D.Pa.1996); *In re Upton Printing*, 197 B.R. 616, 618 (Bankr.E.D.La.1996); *In re Central Florida Electric, Inc.*, 197 B.R. 380, 381 (Bankr.M.D.Fla.1996) (all holding that amended statute applies to pending chapter 11 cases with plans confirmed prior to January 27, 1996). However, there are cases that hold otherwise. See, e.g., *In re Uncle Bud's Inc.*, 206 B.R. 889, 902 (Bankr.M.D.Tenn. 1997) (amendment applies to cases with plans confirmed before effective date provided plans included an explicit requirement for payment of post-confirmation quarterly fees); *Gryphon at the Stone Mansion, Inc. v. United States Trustee (In re Gryphon at the Stone Mansion, Inc.)*, 204 B.R. 460, 463 (Bankr.W.D.Pa.1997) (UST's claim for fees in cases with preamendment plans not enforceable because Bankruptcy Court's jurisdiction limited to enforcing provisions of confirmed plans); *In re Beechknoll Nursing Homes, Inc.*, 202 B.R. 260, 262 (Bankr.S.D.Ohio 1996) (amended § 1930 should not be applied to plan which was confirmed, substantially consummated, and fully administered prior to January 1996 because would impose new duties with respect to a completed transaction); *In re CF & I Fabricators*, 199 B.R. 986, 999 (Bankr.D.Utah 1996) (fees not assessed where confirmed chapter 11 liquidating plan was substantially consummated prior to effective date of amendment), *rev'd*, No. 2:96–CV–920C (D. Utah April 24, 1997).

In subsequent legislation, Congress clarified its intent that amended § 1930(a)(6) applies to all pending cases, even with confirmed plans. See Omnibus Consolidated Appropriations Act of 1997, Pub.L. No. 104–208, Div. A, Tit. I, § 109(d), 110 Stat. 3009, 3009–19 (Sept. 30, 1996) (fees under § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including without limitation, any cases pending as of that date), regardless of confirmation status of their plans). See *Hudson Oil Co.*, 210 B.R. at 383–84; *In re Lancy*, 208 B.R. 481, 483 (Bankr.D.Ariz.1997); *Precision Autocraft, Inc.*, 207 B.R. at 694; *In re Huff*, 207 B.R. 539, 542 (Bankr.W.D.Mich.1997); *In re Maruko, Inc.*, 206 B.R. 225, 229 (Bankr. S.D.Cal.1997); *In re P.J. Keating Co.*, 205 B.R. 663, 666 (Bankr.D.Mass.1997); *In re Betwell Oil and Gas Co.*, 204 B.R. 817, 818 (Bankr.S.D.Fla.1997); *In re Driggs*, 206 B.R. 787, 791 (Bankr.D.Md.1997); *In re McLean Square Assocs.*, 201 B.R. 436, 440 (Bankr. E.D.Va.1996) (all concluding that in clarifying amendment Congress specified its intent that

§ 1930(a)(6) applies to debtors whose chapter 11 plans were confirmed prior to January 27, 1996); *but see In re Burk Dev. Co., Inc.,* 205 B.R. 778, 800–802 (Bankr.M.D.La.1997) (Congress did not give an "unambiguous directive" as to the application of amendment to cases with confirmed plans); *Uncle Bud's Inc.,* 206 B.R. at 891 (recognizing clarifying amendment but applying § 1930(a)(6) only to confirmed plans with specific provision for post-confirmation UST fees); *Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 463 (recognizing clarifying amendment but finding Bankruptcy Court had no jurisdiction to enforce payment of fees); *Beechknoll Nursing Homes, Inc.,* 202 B.R. at 262 (even if clarifying amendment and its legislative history state that quarterly fees should be paid by debtors with plans already confirmed, court found that amendment should not be applied retroactively).[2]

The instant case, however, does not require this Court to determine whether the application of amended § 1930(a)(6) to a plan confirmed prior to the effective date of the amendment is appropriate. This plan was confirmed after the passage of the original amendment, and for better or worse, the amendment clearly applies here. However, the Bankruptcy Court confirmed the plan without a provision for payment of these fees, and the issue is whether this Court should reverse the Order Denying Motion and hold that the debtor owes the UST post-confirmation fees regardless of the plan's omission.

■ The UST argues that this case is analogous to the cases in which the amendment was applied retroactively to already-confirmed plans. In those cases, as here, post-confirmation quarterly fees were upheld even though the plans did not mention post-confirmation fees. But this case differs significantly from those because the UST was on notice of the existence of the amended statute before this plan was confirmed, and let the plan go to confirmation with no effort to insure that the post-confirmation fees were provided for in the plan. Once the Bankruptcy Court confirmed the plan, the UST was bound by the plan just as all other creditors were. The Bankruptcy Court recognized, and we agree, that under 11 U.S.C. § 1129(a)(12),[3] the burden was on the Chap-

2. The amendments to § 1930(a)(6) seem to have created more problems than additional fees. The statute fails to flesh out the mechanism to assess or collect these fees without violating key provisions of chapter 11:(1) 11 U.S.C. § 1129(a)(12), requiring a plan to provide for the payment of all § 1930 fees on or before the effective date of the plan; (2) 11 U.S.C. § 1141, concerning the binding effect of confirmation of a plan; and (3) 11 U.S.C. § 1127(b), allowing only the plan proponent or the reorganized debtor to modify the plan after confirmation and before substantial consummation. Brian Caldwell, *Quarterly Fees: No Quarter Given,* 12 Norton Bankruptcy Law Advisor at 11–13 (Dec.1996).

Also, according to the amendment, fees accrue until some indefinable moment in some cases since a chapter 11 proceeding with a confirmed plan may never end in conversion or dismissal. *See In re C n' B of Florida, Inc.,* 198 B.R. 836, 838 (Bankr.M.D.Fla.1996) (describing the unending obligation to pay quarterly fees in some cases); *but see Driggs,* 206 B.R. at 791 (stating that by its application to "each case under chapter 11," the statute is understood to have the legal effect of requiring the payment of quarterly fees until the case is dismissed, converted, or closed) (citing *McLean Square Assocs.,* 201 B.R. 436). Moreover, a debtor will be unable to predict how long it will take to fully administer the estate, and thus may not know how many quarters following confirmation it will be liable for

fees. This presents an almost impossible situation for a debtor to pay all statutory fees by the effective date of the plan, as required by 11 U.S.C. § 1129(a)(12). Caldwell, *supra,* at 13.

Additionally, since the debtor may not be in possession of the reorganized business after confirmation, the question arises from whom should these fees be collected. *See Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 466 (stating that except as otherwise provided in the plan, the estate revests in the debtor free and clear of all claims and interests of creditors, equity security holders, and general partners of the debtor and that on confirmation, chapter 11 estate ceases to exist); *C n' B of Florida, Inc.,* 198 B.R. at 838 (only debtor-in-possession owes quarterly fees). An equally perplexing question arises concerning how a trustee can collect them from reluctant obligors. *Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 463 (finding that bankruptcy court jurisdiction is limited to enforcing the provisions of confirmed plans, and UST must seek fees in other forum).

3. Section 1129(a)(12) provides that "[t]he court shall confirm a plan only if all of the following requirements are met: ... (12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12).

ter 11 Trustee, as plan proponent, to provide for post-confirmation quarterly UST fee payments in the plan. But the Court also recognized the role of the UST to bring this to the Court's attention. It was then the Court's duty to determine that all the requirements of confirmation were met, including provision of UST fees. Ultimately, the UST failed to alert the Court to the omission, and the Court concluded that "all fees under 28 U.S.C. § 1930 that were brought to its attention 'had been paid.'" Even though the Court admitted that the plan was confirmed in error, that error was not timely pointed out by the UST. *See* Order Denying Motion, at p. 12.[4] Presumably, at confirmation the UST was aware that the plan itself provides that when confirmed, it would bind all parties to this case, precluding a second try at getting fees in the UST's Motion. Trustee's Combined Chapter 11 Plan of Distribution and Disclosure Statement, No. 95–00733–W (Bankr.N.D. Okla. filed June 26, 1996) (Appellant's App. at 17). Curiously, the UST chose to file the Motion the day after confirmation instead of appealing the confirmation order.

 Just as any other creditor, the UST is bound by the confirmed plan, not only under its own terms, but also under 11 U.S.C. § 1141(a). *See Paul v. Monts*, 906 F.2d 1468, 1471 (10th Cir.1990) (confirmed plan of reorganization is binding on the debtor, plan proponents, creditors, and other parties in interest); *Uncle Bud's, Inc.*, 206 B.R. at 901 (unless provided for under plan, post-confirmation quarterly fees would upset provisions of plan which are binding on all parties); *see also* 11 U.S.C. § 101(5) (defining "claim") and (10) (defining "creditor"). Under section 1141, a confirmed plan becomes a binding contract which creates vested substantive property rights and binds the debtor, any creditor, and any entity acquiring property under the plan. Section 1141 also provides that all property of the estate vests in the debtor except as otherwise provided in the plan or confirmation order, and that property dealt with by the plan is free and clear of all claims and interests of creditors. In other words, the confirmed plan precludes the UST from raising claims or issues that could have or should have been raised before confirmation but were not. 8 *Collier on Bankruptcy* ¶ 1141.02 (Lawrence P. King ed., 15th ed. rev.1997). We agree with the Bankruptcy Court's statement that

> [a] confirmed plan is part contract, part corporate charter, and part court order. Among other things, it requires the debtor or Trustee to make specified payments to specified creditors. That specific calculation is the basis on which creditors vote to approve the plan, and the Court itself decides that the plan is feasible and fair enough to be confirmed. Changing the calculation may mean changing everything done in reliance on the calculation—i.e., undoing the confirmation.

Order Denying Motion, at p. 9. In sum, the UST was bound as a contracting party to the plan, and the debtor could reasonably rely on this binding contract in carrying forward its reorganization. *Burk Dev. Co.*, 205 B.R. at 797.

 In addition to conflict with § 1141, principles of res judicata bar the UST from asserting in its Motion a claim which it should have been aware of at the confirmation hearing. It has long been held, that an order confirming a chapter 11 plan constitutes a final judgment on the merits in a bankruptcy case and has res judicata effect. *Stoll v. Gottlieb*, 305 U.S. 165, 170–72, 59 S.Ct. 134, 136–38, 83 L.Ed. 104 (1938). *Accord, First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1314–15

4. For the cases, such as this, with plans confirmed after the amendment, § 1129(a)(12) presents a difficult obstacle. As Caldwell stated,

> Except for the unlikely plan that calls for all distributions to be made during the same quarter as the effective date of the plan, ... this provision cannot be literally complied with unless the effective date of the plan can be delayed indefinitely until the case is ready to be closed. Other confirmation requirements preclude indefinitely postponing the effective date of the plan.... For example, § 1129(a)(7)(A), requires that creditors either accept the plan or receive property with a value as of the effective date that is not less than they would receive if the debtor were liquidated under Chapter 7.

Caldwell, *supra*, at 13.

(4th Cir.1996); *Eubanks v. FDIC,* 977 F.2d 166, 170–71 (5th Cir.1992); *Uncle Bud's Inc.,* 206 B.R. at 901 (citing *Sanders Confectionery Prods., Inc. v. Heller Financial,* 973 F.2d 474, 480 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993)); *Spirco, Inc. v. Copelin (In re Spirco, Inc.),* 201 B.R. 744, 751–53 (Bankr.W.D.Pa.1996) (all stating that confirmed plan is binding on all parties in interest and is res judicata as to all matters relating to the plan). Under this principle, the UST, through its Motion, cannot relitigate what it should have litigated at the confirmation hearing.

 Because the plan did not provide for post-confirmation fees, the UST's Motion was essentially an attempt to modify the plan. However, modification of a confirmed plan is simply not available to the UST:

> Only a plan proponent or the reorganized debtor may request modification and the creditors must be provided the opportunity to accept or reject the proposal. 11 U.S.C. § 1127(b), (c), (d); § 1129.... [A]ny modification must comply with § 1122 (classification of claims or interests) and § 1123 (plan contents). This requirement exists because a plan of reorganization creates new contractual obligations on behalf of a debtor vis-a-vis its creditors.

*Gryphon at the Stone Mansion, Inc.,* 204 B.R. at 463; *see also Uncle Bud's Inc.,* 206 B.R. at 901 (seeking post-confirmation fees when not provided for in plan is impermissible attempt to modify plan); *Beechknoll Nursing Homes, Inc.,* 202 B.R. at 263 (UST has no standing to seek modification of a plan by imposition of post-confirmation fees in cases where plan confirmed prior to amendment and substantially consummated); *but see McLean Square Assocs.,* 201 B.R. at 441 (application of § 1930(a)(6) to a plan confirmed before the amendment was not an impermissible modification of the plan). Requiring the reorganized debtor to pay the post-confirmation fees would impermissibly effect a plan modification. Therefore, the Bankruptcy Court was correct in denying the UST's Motion as a backdoor attempt to achieve plan modification.

 The UST also asserts that the post-confirmation fees arise by operation of law and, therefore, are not dependent upon inclusion in the plan. The UST cites *Holywell Corp. v. Smith,* 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992), in support of this argument. The issue in *Holywell* was whether a trustee appointed to liquidate and distribute property as part of a chapter 11 plan must file income tax returns, even though the plan was silent as to payment of taxes. The trustee argued that he did not have to file income tax returns because the plan did not require him to pay taxes. The trustee also argued that § 1141(a) precluded the United States as a creditor from seeking payment of any taxes, and that the United States should have objected to the plan to ensure payment of taxes. The Court disagreed, noting that the United States was not seeking taxes that became due prior to the trustee's appointment. The Court held that the trustee as the assignee of the property of the debtors must file tax returns because the tax liability under § 6151 of the Internal Revenue Code arises only when the returns are filed, which is upon the post-confirmation sale of property. In answer to the trustee's argument, the Court said, "[e]ven if § 1141(a) binds creditors ... with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims." *Id.* at 58, 112 S.Ct. at 1028.

*Holywell* does not support the UST's position because the quarterly fees at issue arise post-confirmation differently than taxes, which arise "out of events separate and independent of bankruptcy." *Lancy,* 208 B.R. at 485. By contrast, the quarterly fees are directly tied to the bankruptcy case. Under § 1129(a)(12), all fees payable under § 1930, as determined by the bankruptcy court at the confirmation hearing, must have been paid at the time of confirmation or the plan must have provided for their payment by the plan's effective date. Therefore, automatic imposition of post-confirmation quarterly fees regardless of the plan's language would run afoul of § 1129(a)(12). This specific requirement of the Bankruptcy Code creates an important difference from the taxes in *Holywell.* Under § 1129(a)(12), the UST's right to collect quarterly fees post-confirma-

tion must be provided for in the plan prior to confirmation. Therefore, post-confirmation quarterly fees do not lend themselves to the same analysis as income taxes, which are due regardless of the bankruptcy upon a post-confirmation taxable event. Additionally, under § 1129(a)(12), UST fees are payable only "as determined by the court at the hearing on confirmation." These fees, therefore, do not arise automatically by operation of law, they are intricately bound up in the plan confirmation process. Just as any other creditor must assert or waive its claim for fees before confirmation, the UST must assert or waive its right to fees under § 1129(a)(12). *Accord, Lancy,* 208 B.R. at 485 (noting in case confirmed prior to amendments that the post-confirmation taxes in *Holywell* could be imposed without upsetting final confirmation order because duty to file tax return arises independent of bankruptcy, but a new duty to pay quarterly fees would upset final confirmation order).

For the foregoing reasons, the Bankruptcy Court was correct in denying the UST its post-confirmation quarterly fees, which were not provided for in the plan.

Therefore, the order of the Bankruptcy Court is hereby AFFIRMED.